RICE et al. v. SOUTHWESTERN GREY-
HOUND LINES, Inc.

DAVIS et al. v. SOUTHWESTERN
GREYHOUND LINES, Inc.

Nos. 15264, 15265.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 2, 1951.

Rehearing Denied Dec. 7, 1951.

O. David Zimring and Hans J. Leh-
mann, of Chicago, Ill., C. W. Schwoerke,
of Oklahoma City, Okl., and Mullinax,
Wells & Ball and Charles J. Morris, of
Dallas, for appellants.

Cantey, Hanger, Johnson, Scarborough
& Gooch, of Fort Worth, for appellee.

HALL, Chief Justice.

Appellee, Southwestern Greyhound Lines,
Inc., filed two suits in the district court of
Tarrant County against three of its em-
ployees, namely, Frank Rice, H. A. Davis
and Lucille Anderson, together with the
Amalgamated Association of Street, Elec-
tric Railway and Motor Coach Employees
of America, and Division 1313 thereof,
which is an unincorporated voluntary as-
sociation and a labor union, of which the
above appellants were members.

Appellants appeal from a judgment ren-
dered against them in the trial court grant-
ing appellee's motion for summary judg-
ment, denying appellants' motion for sum-
mary judgment and granting judgment for
appellee under the Uniform Declaratory
Judgments Act, Title 46A, Art. 2524-1,
Vernon's Ann.Civ.St., construing certain
terms of the contract.

Both parties, having filed a motion for
summary judgment, concede that no factual
issues were before the court for consider-
ation. The substance of one of the legal
issues before the trial court was whether
or not arbitration awards theretofore made
should be declared legal and effective.

We will treat both cases, our Nos.
15264 and 15265, jointly as their records
are substantially the same.

Appellants' four points in the brief of
Davis and Lucille Anderson are as fol-
lows:

"1. The District Court erred in sub-
stituting its judgment for that of a board of
arbitration as to facts duly considered and
determined by such board of arbitration
pursuant to a contract.

"2. There was no evidence—much less
undisputed evidence—on which to base
summary judgment finding 'fraud' on appel-
lee's right, and 'partiality, misconduct and

gross mistake' on the part of the majority of the board of arbitration in the Davis and Anderson grievance cases.

"3. The arbitrator's award in the Anderson case was not void on account of alleged procedural defects occurring at preliminary stages of the grievance procedure.

"4. The District Court erred in holding that the arbitration awards in the Davis and Anderson grievance cases were rendered without jurisdiction."

The above points one, two and four constitute the points set out in the Frank Rice appeal.

Point three, supra, pertains to whether or not Mrs. Anderson's grievance record ever reached arbitration stage, which we, at this time, sustain.

The substance of appellee's six counterpoints is to the effect that affirmance of the trial court's judgment should prevail because:

First, appellants' briefs failed to comply with elementary rules of briefing, because they only deal in generalities.

Second, that appellants failed to controvert appellee's showing on motion for summary judgment by any sworn answer or counter affidavit.

Third, findings of the arbitrators exceeded the scope of their authority as delegated under the contract.

Fourth, the Union's contruction of the contract is void as ultra vires and against public policy.

Fifth, the arbitrators were not at liberty to disregard their own findings of fact showing guilt of the employees as appeared on the face of their awards.

Sixth, the awards of the arbitrators are unsupported by substantial evidence and therefore based upon gross error and dishonest judgment.

By discussing appellants' points, we overrule appellee's theory that same should not be considered by this court, due to its generality, but at the same time we do recognize that appellants' briefs are not as concise as they should be, taking into consideration the voluminous records in these cases.

Before dealing with appellants' point one, raising the question that the trial court erred in substituting its judgment for that of the Board of Arbitration, we will briefly note portions of the contract between the parties which are under discussion here, as well as the undisputed facts found by the arbitration board, sustaining appellee's evidence submitted in its notice of discharge to the employees in question.

Section 3, Article I, of the contract between the parties, is in part as follows:

"An employee shall not be disciplined or dismissed from service nor shall entries be made against his record without sufficient cause, and he shall receive a written statement of the charges against him. (Then follows a detailed account of the hearing before the arbitration board, as well as steps taken prior to the case's becoming susceptible to arbitration.) * *

"If request for arbitration is made as aforesaid, the question of whether the Company's charges in the case are supported by the evidence shall be submitted for decision by a Board of Arbitration in the following manner:

"The party desiring arbitration shall name its arbitrator in its written request for arbitration. The party receiving such request shall have six (6) days following receipt thereof, exclusive of Sundays and holidays, in which to appoint its arbitrator, and failing to do so in said time shall forfeit its case. The two arbitrators thus selected shall meet in not to exceed ten (10) days following the appointment of the one last appointed for the purpose of hearing, considering and deciding the question. * * * The Board so constituted shall then consider the question. A record shall be made of the proceedings had before the Board and a stenographic transcript shall be taken of all testimony and evidence offered. The parties shall be given a full opportunity to present their case. The written decision of the majority of the members of the Board shall be final and binding upon the parties on the question. * * *

"Section 4. * * * This Section shall not be construed or applied so as to prevent

the Company from assessing discipline or discharge in proper cases based upon an employee's record of past performance, notwithstanding the fact that incidents in such record may have taken place outside the time limits provided for above. If discipline or discharge is based in whole or in part on an employee's past performance the employee involved or the Association may present a grievance and place the same in issue. * * * "

A portion of Article III, Section 1, is as follows:

"All existing rules and regulations relating to the operation and conduct of the Company's business, not in conflict with the provisions of this agreement, shall remain in effect until superseded or changed by subsequent rules or regulations promulgated by the Company not in conflict with this agreement. * * *

"Section 3. The management of the operations and business of the Company and the management and direction of the work and working forces are vested solely and exclusively in the Company unless expressly limited by the terms of this agreement. All other management functions and rights not expressly delegated or limited by the terms of this agreement are reserved by the Company. * * * "

The undisputed testimony presented by the Company against these employees and found to be correct by a majority of the arbitrators is:

Mrs. Lucille Anderson commenced to work for the Company in 1945 in the capacity of a baggage agent at the Kansas City terminal and was discharged August 15, 1949, for failure to show interest in her work and misconduct while on duty. On August 18, 1949, the Company detailed to her the reasons for the discharge, composed of at least nine complaints. The majority arbitrators found, among other things, that she did attempt to commit suicide and did leave the Company's ticket office in the hands of a third person not an employee.

H. A. Davis was originally employed by the Company as ticket agent in Pecos, Texas on May 3, 1935, and transferred to Fort Worth on October 10, 1949. He reported for his regular assignment on Saturday, October 24, 1949, during which time he did not communicate with the proper supervisor of the Company pertaining to his absence between the 10th and 24th of the month. In the meantime creditors were writing to the Company about unpaid accounts of Mr. Davis. His record contained several incidents of mishandling tickets or prepaid orders. Further finding of the Board pertaining to Davis' record is as follows:

"Other parts of Mr. Davis' record deserves severe criticism: At one time one of Mr. Davis's duties required that at the termination of his shift he check the ladies rest room to see whether any one was locked in the same, and that it was in order. On one occasion a woman employee and another woman were in the rest room. They invited Mr. Davis in to have a drink of whiskey, which he did with full knowledge the same was strictly against the Company's rules. On another occasion he put his undated check payable to the Company in the sum of $20.00 in the cash drawer. Mr. Davis admitted he did not have the funds in the Bank to cover this check, but stated that had some one deposited some money to his account as he was supposed to do, the check would have been good. However, it would appear that Mr. Davis was by such a method making a short term loan from the Company. Mr. Davis was also reprimanded a number of times about careless work. Also, during a part of 1948 and 1949 the Company, in an effort to ascertain the efficiency for promotional purposes of its various ticket agents, conducted an efficiency contest. * * * Davis was either low man or close to low man virtually every month during this contest. * * *

"The chief fault of Mr. Davis appears to be his attitude. He is inclined to be antagonistic toward criticism and suggestions. He is also inclined to leave too much to assumption—for instance, he assumed that it was not necessary to answer Mr. Waltersdorf's note about his absence. He assumed a deposit would be made in connection with the $20.00 check. He assumed that Mr. Waltersdorf would know

the name of his doctor and get in touch with him. His attitude toward the efficiency contest was entirely uncooperative. * * "

The Board found that employee Frank Rice had been a bus driver since 1936. He was discharged by the Company on November 30, 1949, for a violation of rules of the Company and based upon unsatisfactory performance of a past record. Findings by the arbitrators of some of the factual issues against Mr. Rice's performance as a chauffeur for the Company are as follows: "The conclusion of the majority of the Board in regard to Mr. Rice's ability and attitude as a driver is that he is an exceptionally skillful driver and that he is inclined to use his own judgment as to what is a safe practice in certain instances where such is opposed to the rules of the Company. His actions in passing on the right on the occasions mentioned, while under circumstances which he did not consider particularly dangerous, are subject to severe criticism, for should an accident occur in such an instance, the Company would be in a dangerous position as to liability for any damage or injury which occurred. Using the overhead light while driving to check his manifest, even in the absence of oncoming traffic, is opposed to the Company rule and is unsafe. It also appears that on occasions he passes vehicles without safe clearance. We are inclined to the view of one of the men who made a report as a passenger on his bus: 'That while he is a good operator, he has become somewhat careless and needs straightening out.' * * * "

Substance of the award of a majority of the arbitrators consists in setting aside the Company's acts in discharging said employees and in some instances ordering the Company to pay to said employees the difference between the amount they earned and the amount they would have earned with the Company during time of suspension, as well as ordering their re-instatement.

■ We need not dwell upon an extended discussion of the evidence since only questions of law are before us. It is sufficient to say, and we so hold, that the trial court did not err in determining the majority of the Board exceeded its authority while holding that the above evidence, which they found to be true, was insufficient to support appellee's order of discharge. This point is overruled.

Our answer to appellants' point one is sufficient to also overrule appellants' point two.

■ While discussing appellants' point four, we will cover all questions raised by both parties pertaining to construction of the contract referring to the scope of arbitrators' authority.

We have carefully read the voluminous contract in its entirety and fail to find express terms authorizing the arbitrators to discharge, re-instate, suspend or penalize employees of the Company. This authority was retained solely and exclusively in the management unless otherwise expressly delegated, under Article III, Section 3, supra.

Appellants rely upon contents expressed in that portion of Article I, Section 3, reading as follows: "If, as a result of the hearing or upon appeal, the discipline or dismissal is found to have been made without sufficient cause, the record of the employee shall be made to conform to the final decision and if time has been lost the employee may be made whole for any loss of earnings which he may have suffered by reason thereof or so much of such loss as may be finally determined to be due him," to grant the majority of the Board authority to exercise jurisdiction over employees pertaining to discharging, penalizing, disciplining and/or re-instating employees who have been discharged by the Company. In considering provisions of the entire contract as a whole, while interpreting the above paragraph, we find that the only authority which the Company released pertaining to the discharging of employees was a very limited one as set out in the contract, to-wit, as to whether the discharge of the employees was supported by the evidence as stated in the following language, which for convenience we recopy: "If request for arbitration is made as aforesaid, the question of whether the Company's

charges in the case are supported by the evidence shall be submitted for decision by a Board of Arbitration in the following manner: * * *"

The stated portion of the contract relied upon by appellants does not specifically set out that the Board shall have authority to re-instate, penalize, suspend or discharge an employee of the Company. The limited authority delegated in such paragraph, supra, gives to the Board the right to conform the *record* of the employee to their decision when they find that the evidence of discharge or suspension ordered by the Company was "without sufficient cause," and in the meantime it has authority (if it so finds) to order the Company to pay the employees in question all or a portion of time lost during pendency of such hearing.

If the parties had contemplated authorizing the arbitrators to make final decisions on the questions of discharging employees and re-instating them, it would have been so easy to have used these or similar expressions denoting such intention. Appellants' fourth point is overruled.

The last portion of appellee's counterpoint four, to-wit, the Union's construction of the contract is "* * * against public policy," is not before us, since we have found that appellee did not contract with appellant labor organization to arbitrate the questions of discharging and re-instating its employees.

Judgment of the trial court is affirmed.